UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| COLIN RAKER DICKEY, | No. 1:25-cv-01322-JLT-SKO (HC) |
| Petitioner, | **FINDINGS AND RECOMMENDATION TO DENY PETITION FOR WRIT OF HABEAS CORPUS** |
| v. | |
| WARDEN OF PELICAN BAY STATE PRISON, | **[TWENTY-ONE DAY OBJECTION DEADLINE]** |
| Respondent. | |

Petitioner is a state prisoner proceeding with counsel with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. He filed the instant petition on October 6, 2025, challenging his resentencing in Fresno County Superior Court. (Doc. 1.) Respondent filed an answer to the petition on December 2, 2025. (Doc. 12.) On December 22, 2025, Petitioner filed a traverse and a motion for summary judgment.  (Docs. 13, 14.) On January 5, 2026, Respondent filed an opposition to the motion. (Doc. 15.) Upon review of the pleadings, the Court finds the petition to be without merit and will recommend it and the motion for summary judgment be **DENIED**.

## I.    PROCEDURAL HISTORY

Petitioner was convicted in the Fresno County Superior Court on March 15, 1991, of two counts of first-degree robbery (Cal. Penal Code § 211), one count of first-degree burglary (Cal. Penal Code §§ 459/460), and two counts of first-degree murder (Cal. Penal Code § 187(a)) with

1

robbery-murder, burglary-murder, and multiple-murder special circumstances (Cal. Penal Code § 190.2(a)(3),(17)). (Doc. 11-1 at 122-25.[1]) Petitioner was sentenced to death.

Petitioner challenged his conviction and sentence in state and federal court. The California Court of Appeal, Fifth Appellate District (hereinafter "Fifth DCA") provided the following procedural summary:

**I. Initial State Court Proceedings**

On March 15, 1991, a jury convicted defendant on two counts of first degree murder (Pen. Code, § 187, subd. (a)) with robbery-murder, burglary-murder, and multiple-murder special circumstances (§ 190.2, subd. (a)(3), (17)), as well as two counts of first degree robbery (§ 211), and one count of first degree burglary (§§ 459, 460). He was sentenced to death. (*People v. Dickey* (2005) 35 Cal.4th 884, 894–899, 28 Cal.Rptr.3d 647, 111 P.3d 921.)

In his automatic appeal, the California Supreme Court affirmed defendant's judgment of conviction and sentence. (*People v. Dickey, supra*, 35 Cal.4th at p. 894, 28 Cal.Rptr.3d 647, 111 P.3d 921.) As relevant here, defendant challenged the sufficiency of the evidence supporting the special circumstance findings. (*Id*. at pp. 900–904, 28 Cal.Rptr.3d 647, 111 P.3d 921.) First, defendant argued there was insufficient evidence to support a finding that he aided and abetted the killings themselves, as opposed to merely aiding and abetting the underlying felonies. (*Id*. at p. 901, 28 Cal.Rptr.3d 647, 111 P.3d 921.) The high court rejected this argument, holding that the jury was not required to find defendant aided and abetted the actual killings to find the special circumstances true. (*Id*. at pp. 900–902, 28 Cal.Rptr.3d 647, 111 P.3d 921.) Second, defendant argued the evidence did not support a finding that he had the requisite intent to kill the victims. (*Id*. at p. 903, 28 Cal.Rptr.3d 647, 111 P.3d 921.) Relying in significant part on Richard B.'s testimony, the high court determined the evidence was sufficient to support this finding. (*Id*. at pp. 903–904, 28 Cal.Rptr.3d 647, 111 P.3d 921.)

On August 27, 2021, defendant filed a petition for resentencing pursuant to former section 1170.95 (now § 1172.6). [Fn.6] Following briefing and a hearing at which defendant was represented by counsel, the trial court denied the petition. This court affirmed. (*People v. Dickey* (Mar. 23, 2023, F084345) [nonpub. opn.].) In so doing, we relied on the high court's opinion in defendant's automatic appeal to conclude the jury's special circumstance findings established defendant had been convicted under a theory of murder that remains valid after the effective date of Senate Bill No. 1437. (*People v. Dickey*, F084345.) The California Supreme Court denied review. (*People v. Dickey* (June 21, 2023, S279466) [order].)

> [Fn.6] Senate Bill No. 1437 (2017–2018 Reg. Sess.) (Senate Bill No. 1437) narrowed the felony-murder rule and added former section 1170.95 to provide a procedure for those convicted under the former law to seek relief. (*People v. Curiel* (2023) 15 Cal.5th 433, 449, 315 Cal.Rptr.3d 495, 538 P.3d 993 (*Curiel*).) Former section 1170.95 later was amended in nonrelevant part (Sen. Bill No. 775 (2021–2022 Reg. Sess.) (Stats. 2021, ch. 551, § 2)), then renumbered section 1172.6, with no change in text.

---

[1] Document and page citations are to ECF pagination.

(Assem. Bill No. 200 (2021–2022 Reg. Sess.) (Stats. 2022, ch. 58, § 10)). We refer to the current section 1172.6 in this opinion.

## II. Federal Court Proceedings

Meanwhile, defendant pursued a petition for writ of habeas corpus in federal court. "The [federal] district court denied relief on his guilt-phase claims in 2017, [citation], and denied relief on his penalty-phase claims in 2019, [citation]." (*Dickey v. Davis, supra*, 69 F.4th at p. 635.) However, the federal district court granted a certificate of appealability as to whether the prosecution knowingly used false evidence from Richard B. in violation of *Napue v. Illinois* (1959) 360 U.S. 264, 79 S.Ct. 1173, 3 L.Ed.2d 1217, and failed to disclose favorable impeachment evidence regarding benefits provided to Richard B. in violation of *Brady v. Maryland* (1963) 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215. (*Dickey v. Davis*, at p. 635.)

On appeal from the denial of the petition, the Ninth Circuit held that defendant was entitled to habeas relief as to the jury's special circumstances findings and the imposition of the death penalty. The court explained:

> "This is an exceptional case in which the prosecutor deliberately elicited, and then failed to correct, false and misleading testimony from the State's star witness, [Richard B.]. The prosecutor went on to exploit [Richard B.'s] false testimony in his closing argument. He also failed to produce evidence to the defense team that would have seriously impeached [Richard B.'s] testimony. These points are uncontested; the central issue in this appeal is the materiality of the State's *Napue* and *Brady* violations.

> "To obtain the death penalty, the State was required to prove special circumstances, and the record makes clear that the State's special-circumstances evidence depended on [Richard B.'s] testimony. It also makes clear that the prosecutor recognized the jury would have ample reason to doubt [Richard B.]. To shore up [Richard B.'s] testimony, the State asked the court to read aloud a California statute that put [Richard B.] on notice that he would subject himself to the death penalty if he lied under oath and [defendant] was wrongfully convicted and executed. What the jury did not know—because the prosecutor did not correct the false testimony—is that [Richard B.] did lie to them under oath, even given the potential consequences for doing so in a capital case." (*Dickey v. Davis, supra*, 69 F.4th at pp. 628–629.)

The court further held it was objectively unreasonable for the California Supreme Court to decide, in defendant's automatic appeal, that (1) the prosecutor's conduct was immaterial to the jury's special circumstance findings and (2) correcting Richard B.'s false testimony could not have changed the jury's decision to impose the death penalty. (*Dickey v. Davis, supra*, 69 F.4th at p. 629.) After determining defendant was entitled to relief, the court reversed and remanded to the federal district court with instructions to grant a conditional writ of habeas corpus as to the jury's special circumstance findings and imposition of the death penalty. (*Ibid.*)

On September 7, 2023, the district court granted the conditional writ of habeas corpus as to the special circumstance findings and the imposition of the death penalty and ordered, "**[w]ithin 90 days**, the State of California may grant [defendant] a new trial on the special-circumstances allegations or agree that he may be sentenced to a penalty other than death in conformity with state law."

3

(*Dickey v. Davis, supra*, 2024 U.S. Dist. Lexis 91052, [2024 WL 2300965].)

**III. Subsequent State Court Proceedings**

In the intervening period between the Ninth's Circuit's opinion and the federal district court's order, the People notified defendant and the court that they did not intend to retry the special circumstance allegations.

At a hearing held on December 8, 2023, defense counsel argued defendant could not be resentenced for murder in conformity with state law because his murder convictions were no longer valid. More specifically, defense counsel reasoned that (1) this court previously affirmed the denial of defendant's section 1172.6 petition on the ground the special circumstance findings established he aided and abetted the underlying felonies with intent to kill and he was ineligible for resentencing on that basis; (2) the special circumstance findings since were eliminated by the Ninth Circuit's determination that they were materially tainted by *Napue* and *Brady* violations; and (3) no other basis appeared in the record to support the murder convictions under current law. Defense counsel argued only the six-year term for one of the robberies and concurrent terms on the remaining robbery and burglary counts remained, all of which had been served in full. The prosecutor argued that the murder verdicts were "still in play." The court noted that it lacked written briefing from both parties and ordered the parties to brief their positions on resentencing.

Defendant then filed a written motion to vacate the sentence and for immediate release. He argued the state had failed to timely agree to a sentence that would conform to state law, as defendant contended was required by the federal district court's order and Ninth Circuit's opinion, thus necessitating his immediate release from custody. He further argued he could not be resentenced on any of the offenses. Specifically, he argued he had served his sentences for robbery and burglary and those sentences therefore should be stayed or vacated. He also once again argued his murder convictions did not rest on a currently valid theory of murder and he therefore could not be resentenced for murder in conformity with state law.

The People opposed defendant's motion. They argued they had complied with the federal court's orders by timely agreeing to strike the special circumstance allegations and agreeing that defendant could be resentenced to a penalty other than death in conformity with state law. The People asserted the delays in resentencing were attributable to communications between the parties in which defendant requested that the People stipulate that defendant was entitled to have his murder convictions vacated pursuant to section 1172.6, and the People's evaluation of the case file in response to that request. Ultimately, however, the People determined they would not stipulate to defendant's resentencing pursuant to section 1172.6 and asked the court to sentence him to a term of 50 years to life. The People noted defendant had not complied with the requirements of section 1172.6 and therefore was not entitled to relief pursuant to that section.

A resentencing hearing was conducted on February 16, 2024. The court noted defendant had not filed a section 1172.6 petition and defense counsel stated no such petition was required. Defense counsel argued, "There is no murder conviction under State law." The court stated defendant still had two murder convictions, as well as two robbery convictions and a burglary conviction. The court opined that, to receive a determination that defendant's conduct no longer constituted murder under current law, "you have a [section] 1172.6 petition and

4

> you show that the People cannot proceed with the case and ... prove that he is guilty of murder now." The People noted that the Ninth Circuit left the murder convictions intact and agreed with the court that defendant's contentions should be resolved through the section 1172.6 procedure. The People also argued that resentencing based on the federal district court's order would not preclude defendant seeking section 1172.6 relief, and the People conceded that defendant was entitled to an evidentiary hearing under that section. However, the People argued they could still show that defendant was a major participant in the underlying felonies and acted with reckless indifference toward human life. Defense counsel again disagreed that a section 1172.6 petition was required. The court again noted that the murder convictions had not been vacated and defendant had not filed a section 1172.6 petition. The court declined to take further action with regard to the validity of the murder convictions, absent a section 1172.6 petition.
>
> The court sentenced defendant to consecutive terms of 25 years to life on each of the two murders. Sentence on the remaining counts was imposed and stayed.

People v. Dickey, 2024 WL 4997445, at *4–7 (Cal. Ct. App. Dec. 5, 2024), *review denied* (Feb. 19, 2025).

**II.     FACTUAL BACKGROUND**

As noted by the Fifth DCA, the actual facts of the underlying conviction do not bear on the resolution of the issues in this case. In summary, Petitioner and an accomplice committed robbery and burglary of a residence. During the robbery/burglary, two residents, an elderly couple, were killed.

**III.    DISCUSSION**

A.     Jurisdiction

Relief by way of a petition for writ of habeas corpus extends to a person in custody pursuant to the judgment of a state court if the custody is in violation of the Constitution, laws, or treaties of the United States.  28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3);  Williams v. Taylor, 529 U.S. 362, 375 n. 7 (2000).  Petitioner asserts that he suffered violations of his rights as guaranteed by the United States Constitution.  The challenged conviction arises out of the Fresno County Superior Court, which is located within the jurisdiction of this court.  28 U.S.C. § 2254(a); 28 U.S.C.§ 2241(d).

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its enactment.  Lindh v. Murphy, 521 U.S. 320 (1997) (holding the AEDPA only applicable to cases

filed after statute's enactment). The instant petition was filed after the enactment of the AEDPA and is therefore governed by its provisions.

### B.    Motion for Summary Judgment

As previously noted, Petitioner filed a motion for summary judgment in conjunction with his reply. Summary judgment is a procedural device available for prompt and expeditious disposition of controversy without trial when there is no dispute as to material fact. See Advisory Committee Notes, Fed.R.Civ.P. 56, 1963 Amendment ("The very mission of the summary judgment procedure is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial."). Thus, its purpose is to prevent the need for trial over facts that are not legitimately in dispute. Petitioner has filed a petition for writ of habeas corpus. "[T]he writ of habeas corpus is not a proceeding in the original criminal prosecution but an independent civil suit." Riddle v. Dyche, 262 U.S. 333, 335-336 (1923); see also Keeney v. Tamayo-Reyes, 504 U.S. 1, 14 (1992) (O'Connor, J., dissenting). Modern habeas corpus procedure has the same function as an ordinary appeal. Anderson v. Butler, 886 F.2d 111, 113 (5th Cir. 1989); O'Neal v. McAnnich, 513 U.S. 440, 442 (1995). In a habeas proceeding, the petitioner does not proceed to "trial." Since the passage of AEDPA, a habeas petitioner is rarely entitled to an evidentiary hearing. Cullen v. Pinholster, 563 U.S. 170, 203 (2011). Whatever beneficial role summary judgment may have played in habeas proceedings prior to AEDPA is now virtually non-existent. For all practical purposes, summary judgment is equivalent to the Court's making a determination on the merits of a habeas petition. Thus, motions for summary judgment are inappropriate in federal habeas proceedings. See, e.g., Johnson v. Siebel, 2015 WL 9664958, at *1 n.2 (C.D.Cal. Aug. 4, 2015); Mulder v. Baker, 2014 WL 4417748, at *1–*2 (D.Nev. Sept. 8, 2014); Gussner v. Gonzalez, 2013 WL 458250, at *3–*5 (N.D.Cal. Feb. 5, 2013); Ordway v. Miller, 2013 WL 1151985, at *1 (E.D.Cal. Mar. 19, 2013).

As discussed below, the Court finds the petition to be without merit. The motion for summary judgment should be denied.

### C.    Legal Standard of Review

A petition for writ of habeas corpus under 28 U.S.C. § 2254(d) will not be granted unless

6

the petitioner can show that the state court's adjudication of his claim: (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d); Lockyer v. Andrade, 538 U.S. 63, 70-71 (2003); Williams, 529 U.S. at 412-413.

Under Section 2254(d)(1), a state court decision is "contrary to" clearly established federal law "if it applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases, or "if it confronts a set of facts that is materially indistinguishable from a [Supreme Court] decision but reaches a different result."  Brown v. Payton, 544 U.S. 133, 141 (2005) (citing Williams, 529 U.S. at 405-406).  This court looks to "Supreme Court holdings at the time of the state court's last reasoned decision" as "the source of clearly established Federal law for the purposes of AEDPA." Barker v. Fleming, 423 F.3d 1085, 1093 (9th Cir. 2005). A Supreme Court precedent is not clearly established law under section 2254(d)(1) unless the Court "squarely addresses the issue" in the case before the state court. Wright v. Van Patten, 552 U.S. 120, 125–26 (2008) (per curiam) (concluding that a state court had not unreasonably applied federal law to a claim of prejudice under Strickland where the logic of petitioner's argument would have required the extension of the Supreme Court's inherent prejudice doctrine to a new context); Carey v. Musladin, 549 U.S. 70, 76–77 (2006) (same). While "[c]ertain principles are fundamental enough that when new factual permutations arise, the necessity to apply the earlier rule will be beyond doubt," Yarborough v. Alvarado, 541 U.S. 652, 666 (2004), "when a state court may draw a principled distinction between the case before it and Supreme Court caselaw, the law is not clearly established for the state-court case." Murdoch v. Castro, 609 F.3d 983, 991 (9th Cir. 2010). "'[I]f a habeas court must extend a rationale before it can apply to the facts at hand,' then by definition the rationale was not 'clearly established at the time of the state court decision.'" White v. Woodall, 572 U.S. 415, 426 (2014) (quoting Yarborough, 541 U.S. at 666).

In Harrington v. Richter, 562 U.S. 86, 101 (2011), the U.S. Supreme Court explained that an "unreasonable application" of federal law is an objective test that turns on "whether it is

7

possible that fairminded jurists could disagree" that the state court decision meets the standards set forth in the AEDPA.  The Supreme Court has "said time and again that 'an unreasonable application of federal law is different from an incorrect application of federal law.'"  Cullen v. Pinholster, 563 U.S. 170, 203 (2011).  The petitioner "must show far more than that the state court's decision was 'merely wrong' or 'even clear error.'"  Shinn v. Kayer, 592 U.S. 111, 118 (2020) (quoting Virginia v. LeBlanc, 582 U. S. 91, 93 (2017) (*per curiam*)).  Rather, a state prisoner seeking a writ of habeas corpus from a federal court "must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law *beyond any possibility of fairminded disagreement*."  Richter, 562 U.S. at 103 (emphasis added); see also Kayer, 592 U.S. at 118.  In other words, so long as fairminded jurists could disagree with each other as to whether the state court was correct, the state court decision is not unreasonable under AEDPA.  Congress "meant" this standard to be "difficult to meet."  Richter, 562 U.S. at 102.

Section 2254(d)(2) pertains to state court decisions based on factual findings.  Davis v. Woodford, 384 F.3d 628, 637 (9th Cir. 2003) (citing Miller-El v. Cockrell, 537 U.S. 322 (2003)).  Under § 2254(d)(2), a federal court may grant habeas relief if a state court's adjudication of the petitioner's claims "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  Wiggins v. Smith, 539 U.S. 510, 520 (2003); Jeffries v. Wood, 114 F.3d 1484, 1500 (9th Cir. 1997).  The federal habeas court must give "substantial deference" to the state court.  Brumfield v. Cain, 576 U.S. 305, 314 (2015). "Factual determinations by state courts are presumed correct" and the petitioner bears the burden of overcoming the presumption with "clear and convincing evidence to the contrary."  Miller-El, 537 U.S. at 340; 28 U.S.C. § 2254(e)(1). A state court's factual finding is unreasonable when it is "so clearly incorrect that it would not be debatable among reasonable jurists."  Jeffries, 114 F.3d at 1500; see Taylor v. Maddox, 366 F.3d 992, 999-1001 (9th Cir. 2004), *cert.denied*, Maddox v. Taylor, 543 U.S. 1038 (2004).  If "'[r]easonable minds reviewing the record might disagree' about the finding in question, '. . . that does not suffice'" to prove the lower court's factual determination was unreasonable. Wood v. Allen, 558 U.S. 290, 301 (2010) (alteration in

8

original) (quoting Williams v. Taylor, 529 U.S. 362, 410 (2000)).

To determine whether habeas relief is available under § 2254(d), the federal court looks to the last reasoned state court decision as the basis of the state court's decision. See Ylst v. Nunnemaker, 501 U.S. 979, 803 (1991); Andrews v. Davis, 994 F.3d 1042, 1107 (9th Cir. 2019) (en banc). "[A]lthough we independently review the record, we still defer to the state court's ultimate decisions." Pirtle v. Morgan, 313 F.3d 1160, 1167 (9th Cir. 2002).

The prejudicial impact of any constitutional error is assessed by asking whether the error had "a substantial and injurious effect or influence in determining the jury's verdict." Brecht v. Abrahamson, 507 U.S. 619, 623 (1993); see also Fry v. Pliler, 551 U.S. 112, 119-120 (2007) (holding that the Brecht standard applies whether or not the state court recognized the error and reviewed it for harmlessness).

D.    Review of Claims

Petitioner contends his Fifth, Sixth, Eighth, and Fourteenth Amendment rights were violated when he was resentenced to 50 years to life for two felony murders despite the record being devoid of a jury verdict that he intended to kill either victim. He argues he could not be sentenced for felony murder in conformance with state law without an instruction to the jury to make such a finding. Petitioner raised this claim to the California courts. In the last reasoned decision, the Fifth DCA rejected the claim as follows:

> Defendant contends the trial court could not validly sentence him for murder in conformity with state law. He contends the Ninth Circuit's opinion disposing of the special circumstance findings eliminated the sole basis for upholding his murder convictions under current state law. He therefore contends there is no murder conviction available on which to sentence him. In effect, he contends his murder convictions were reversed or vacated by operation of law when the Ninth Circuit directed the federal district court to grant habeas relief on the special circumstance findings. On this basis, he contends the sentences on his murder convictions are unlawful.
>
> As we explain below, defendant's murder convictions were left undisturbed by both the Ninth Circuit and the federal district court, and defendant has declined to avail himself of the procedures set forth in section 1172.6 for vacating those convictions. Accordingly, defendant remains convicted on two counts of murder and the sentences associated with those counts are not invalid. [Fn.7] If defendant wishes to pursue relief on his murder convictions, he must do so through the processes set forth in section 1172.6.
>
> [Fn.7] Aside from his claim that consecutive sentences were vindictive,

9

which is discussed below, defendant does not otherwise dispute that the sentence of 25 years to life was the appropriate sentence on each count of murder.

**A. Senate Bill No. 1437**

Effective January 1, 2019, Senate Bill No. 1437 "altered the substantive law of murder in two areas." (*Curiel, supra,* 15 Cal.5th at p. 448.) First, the bill narrowed the scope of the felony-murder rule "so that a 'participant in the perpetration or attempted perpetration of a [specified felony] in which a death occurs' can be liable for murder only if '[t]he person was the actual killer'; '[t]he person was not the actual killer, but, with the intent to kill, aided, abetted, counseled, commanded, induced, solicited, requested, or assisted the actual killer in the commission of murder in the first degree'; or '[t]he person was a major participant in the underlying felony and acted with reckless indifference to human life.'" (*People v. Arellano* (2024) 16 Cal.5th 457, 467–468, 322 Cal.Rptr.3d 548, 550 P.3d 1073, quoting § 189, subd. (e)(1)–(3).) Second, the bill "eliminate[d] liability for murder as an aider and abettor under the natural and probable consequences doctrine" by requiring that, "except in cases of felony murder, 'a principal in a crime shall act with malice aforethought' to be convicted of murder." (*Curiel*, at p. 449, quoting § 188, subd. (a)(3).) Now, "'[m]alice shall not be imputed to a person based solely on his or her participation in a crime.'" (*Curiel*, at p. 449.)

Additionally, Senate Bill No. 1437 added former section 1170.95, now section 1172.6, to provide a procedure for those convicted of a qualifying offense "'to seek relief' where the two substantive changes described above affect a defendant's conviction." (*Curiel, supra*, 15 Cal.5th at p. 449.) Section 1172.6 provides two vehicles for relief. The first is the section 1172.6 petition process. Under this process, an offender seeking resentencing must first file a petition in the sentencing court, and the sentencing court must determine whether the petitioner has made a prima facie showing that he or she is entitled to relief. (§ 1172.6, subds. (a)–(c); accord, *People v. Strong* (2022) 13 Cal.5th 698, 708, 296 Cal.Rptr.3d 686, 514 P.3d 265.) "'If the petition and record in the case establish conclusively that the [petitioner] is ineligible for relief, the trial court may dismiss the petition.'" (*Curiel, supra,* 15 Cal.5th at p. 450.) "Otherwise, the court must issue an order to show cause (§ 1172.6, subd. (c)) and hold an evidentiary hearing at which the prosecution bears the burden 'to prove, beyond a reasonable doubt, that the petitioner is guilty of murder or attempted murder' under the law as amended by Senate Bill [No.] 1437 (§ 1172.6, subd. (d)(3)). In addition to evidence admitted in the petitioner's prior trial, both '[t]he prosecutor and the petitioner may also offer new or additional evidence to meet their respective burdens.' (*Ibid*.) 'If the prosecution fails to sustain its burden of proof, the prior conviction, and any allegations and enhancements attached to the conviction, shall be vacated and the petitioner shall be resentenced on the remaining charges.'" (*People v. Wilson* (2023) 14 Cal.5th 839, 869, 309 Cal.Rptr.3d 211, 530 P.3d 323 (*Wilson*).)

In addition to the foregoing, "[a] person convicted of murder ... whose conviction is not final may challenge on direct appeal the validity of that conviction based on the changes made to Sections 188 and 189 by Senate Bill [No.] 1437 ...." (§ 1172.6, subd. (g).) "The Courts of Appeal have handled claims under section 1172.6, subdivision (g) by finding retroactive error and reviewing for harmlessness. [Citations.] Unlike trial court proceedings on section 1172.6 resentencing petitions, parties on appeal are generally prevented from presenting new evidence to support their positions. While a defendant can elect to forgo the presentation of new evidence by pursuing a section 1172.6, subdivision (g) claim on appeal, the

prosecution has no such choice. The filing of such a claim on appeal deprives the People of the statutorily conferred ability to submit additional evidence of the defendant's liability on a still-valid theory. [Citations.] Any unfairness to the prosecution, however, is mitigated by the different remedies available in the two proceedings. When an error asserted on appeal in a subdivision (g) claim is not harmless, the defendant is entitled only to retrial of the murder charge, not resentencing." (*Wilson, supra*, 14 Cal.5th at pp. 871–872.)

Our Supreme Court has acknowledged "uncertainties in how section 1172.6, subdivision (g) should operate," and has assumed, without deciding, that claims of retroactive error raised on appeal pursuant to section 1172.6, subdivision (g) are subject to harmless error analysis under the standard of prejudice applicable to alternative-theory error. (*Wilson, supra*, 14 Cal.5th at p. 872; see *People v. Aledamat* (2019) 8 Cal.5th 1, 13, 251 Cal.Rptr.3d 371, 447 P.3d 277 [discussing standard of review for alternative-theory error].)

**B. Analysis**

We reiterate that the federal courts left defendant's murder convictions undisturbed. Both the federal district court and the Ninth Circuit denied relief on defendant's guilt phase claims. (*Dickey v. Davis, supra*, 69 F.4th at pp. 629, 635.) The Ninth Circuit reversed the federal district court's denial of certain of defendant's certified penalty phase claims and remanded with "instructions to grant a conditional writ of habeas corpus as to the special-circumstances findings and the imposition of the death penalty." (*Id.* at p. 648.) The federal district court followed the Ninth Circuit's instructions precisely. (*Dickey v. Davis, supra*, 2024 U.S. Dist. Lexis 91052, [2024 WL 2300965].) Nothing in either court's opinion or orders purports to undermine the validity of defendant's murder convictions.

Furthermore, contrary to defendant's assertions, there is no procedure that automatically invalidates his murder convictions by operation of law in light of the statutory changes enacted through Senate Bill No. 1437. To the contrary, the Legislature set forth two exclusive avenues through which those convicted under the prior law can obtain relief: through the section 1172.6 petition process and, for those "whose conviction is not final," on direct appeal. (§ 1172.6, subd. (g); see § 1172.6, subd. (a); *Wilson, supra*, 14 Cal.5th at p. 869.)

Here, defendant repeatedly declined to avail himself of the section 1172.6 petition process in the trial court. No other vehicle was available for the trial court to consider the continuing validity of defendant's murder convictions. Accordingly, the trial court proceeded to resentence defendant to the punishment applicable under state law for the offense of murder. In so doing, the trial court did not err.

A more difficult question is whether defendant may pursue relief pursuant section 1172.6, subdivision (g) in the instant appeal. Defendant initially did not pursue relief pursuant to this section or subsection in this appeal. Defendant's opening brief mentions section 1172.6 only once, in reference to his prior petition. Instead, he argues in his opening brief that his sentences for murder must be set aside because his murder convictions *already* were rendered invalid. It is not until defendant's reply brief that he purports to seek relief pursuant to section 1172.6, subdivision (g). Even so, he does not seem to seek the remedy available to him pursuant to section 1172.6, subdivision (g), i.e., retrial. (*Wilson, supra*, 14 Cal.5th at pp. 871–872.) In any event, we generally do not address issues raised for the first time in a reply. Instead, such issues are deemed forfeited. (*Malmquist v. City of Folsom* (2024) 101 Cal.App.5th 1186, 1205, fn. 6, 321 Cal.Rptr.3d 31.)

11

Even if we were inclined to address this argument, defendant would not be entitled to relief. Section 1172.6, subdivision (g) permits a defendant "whose conviction is *not final*" to challenge the validity of "*that conviction*." (§ 1172.6, subd. (g), italics added.) Our Supreme Court recently considered the applicability of this language to a similarly postured case in *Wilson*. As in the instant case, the defendant in *Wilson* was found guilty of murder and sentenced to death, and the guilt judgment was affirmed in his automatic appeal. (*Wilson, supra*, 14 Cal.5th at pp. 844–845, 870.) However, the sentence later was reversed and, following retrial, he again was sentenced to death. (*Id*. at p. 845, 309 Cal.Rptr.3d 211, 530 P.3d 323.) On appeal from this second penalty phase verdict, the defendant argued he was entitled to seek relief from his murder conviction pursuant to section 1172.6, subdivision (g). (*Wilson*, at p. 870,.)

The high court noted that the applicability of section 1172.6, subdivision (g) was "complicated ... by the case's procedural posture." (*Wilson, supra*, 14 Cal.5th at p. 870.) "[W]hen a penalty phase judgment alone is reversed, 'the original judgment on the issue of guilt remains final during the retrial of the penalty issue and during all appellate proceedings reviewing the trial court's decision on that issue.'" (*Id*. at pp. 870–871, 309 Cal.Rptr.3d 211, 530 P.3d 323.) Accordingly, the "defendant's murder conviction [in *Wilson*] would appear to have become final no later than 2009, when the time expired for seeking certiorari in the United States Supreme Court [following our Supreme Court's affirmance of the conviction]." (*Id*. at p. 870, 309 Cal.Rptr.3d 211, 530 P.3d 323.) The high court intimated that its earlier "affirmance of the guilt judgment rendered [the] defendant's murder conviction final" for purposes of section 1172.6, subdivision (g). (*Wilson*, at p. 871,.)

Ultimately, the high court did not resolve the applicability of section 1172.6, subdivision (g) to the appeal in *Wilson*. Instead, the Attorney General "assume[d] for purposes of [the] appeal that [the] defendant may challenge his conviction under section 1172.6, subdivision (g) in [the] appeal from his sentence," and the high court therefore also assumed, without deciding, that the claim was properly presented. (*Wilson, supra*, 14 Cal.5th at p. 871.) The high court then concluded the defendant was not entitled to reversal because any retroactive error under section 1172.6 was harmless beyond a reasonable doubt. (*Wilson*, at p. 871.)

We acknowledge the high court's discussion of finality in *Wilson* is dicta. Nonetheless, it is persuasive on the issue of whether defendant's convictions may be challenged on direct appeal pursuant to section 1172.6, subdivision (g). Under the high court's reasoning in *Wilson*, defendant's convictions became final in 2006, after they were affirmed by the California Supreme Court and the United States Supreme Court denied defendant's petition for a writ of certiorari. (*Wilson, supra*, 14 Cal.5th at p. 870.) Because the convictions are final, defendant may not bring a challenge pursuant to section 1172.6, subdivision (g) in this appeal. (§ 1172.6, subd. (g) ["A person convicted of murder ... whose *conviction is not final* may challenge on direct appeal the validity of *that conviction ....*" (italics added)].)

Neither party discusses the import of *Wilson* on this appeal or presents a compelling argument to controvert *Wilson's* discussion of finality. [Fn.8] Instead, in his reply brief, defendant relies on the opinion in *People v. Padilla* (2020) 50 Cal.App.5th 244, 263 Cal.Rptr.3d 784, affirmed, *People v. Padilla* (2022) 13 Cal.5th 152, 293 Cal.Rptr.3d 623, 509 P.3d 975, for the proposition that a judgment becomes nonfinal when the sentence is vacated on habeas corpus. However, *People v. Padilla* considered whether *a judgment* became nonfinal for purposes of the retroactivity presumption set forth in *In re Estrada* (1965) 63 Cal.2d 740, 48 Cal.Rptr. 172, 408

12

P.2d 948 (*People v. Padilla, supra*, 13 Cal.5th at p. 158; *People v. Padilla, supra*, 50 Cal.App.5th at p. 251), whereas the specific statutory language of section 1172.6, subdivision (g) specifies that relief is available where *the conviction* is not final (§ 1172.6, subd. (g); accord, *Wilson, supra*, 14 Cal.5th at p. 870). Moreover, consistent with *Wilson*, both the Court of Appeal and Supreme Court in *People v. Padilla* recognized that the successful petition for writ of habeas corpus reopened the finality of the sentence for *Estrada* retroactivity purposes, but did not permit a defendant to relitigate claims relating to the conviction, which remained final. [Fn.9] (*People v. Padilla*, 13 Cal.5th at pp. 169–170; *People v. Padilla*, 50 Cal.App.5th at pp. 252–253.)

> [Fn.8] Defendant cites *Wilson* once in his reply brief for the proposition that section 1172.6 permits challenges on appeal from nonfinal convictions but does not otherwise discuss the case.

> [Fn.9] We recognize that some courts, including this one, have declined to extend this aspect of the high court's decision in *People v. Padilla* to other contexts. (See, e.g., *People v. Mitchell* (2023) 97 Cal.App.5th 1127, 1129–1140, 316 Cal.Rptr.3d 233, rev. granted Feb. 21, 2024, S283474; *People v. Trent* (2023) 96 Cal.App.5th 33, 43, 313 Cal.Rptr.3d 911, rev. granted Dec. 20, 2023, S282644.) Regardless, it cannot be said that *People v. Padilla* supports a conclusion that defendant's convictions were rendered nonfinal by his successful habeas petition.

In sum, defendant's murder convictions were undisturbed by the opinion and orders of the federal courts. Defendant did not challenge his murder convictions through the section 1172.6 petition process, and his belated attempt to pursue relief on appeal pursuant to section 1172.6, subdivision (g) forfeited the issue. Regardless, section 1172.6, subdivision (g) is inapplicable in this case because defendant's convictions are final. (See *Wilson, supra*, 14 Cal.5th at p. 871.) Accordingly, defendant remains convicted on two counts of murder and the trial court did not err in resentencing him on those counts. Defendant retains any remedies that may be available to him through a new section 1172.6 petition brought in the trial court, and we do not opine on the merits of any such petition.

Dickey, 2024 WL 4997445, at *8-11.

### 1. Analysis

A writ of habeas corpus is available under 28 U.S.C. § 2254 only on the basis of some transgression of federal law binding on the state courts, see Middleton v. Cupp, 768 F.2d 1083, 1085 (9th Cir.1985), and is unavailable for alleged errors in the interpretation or application of state law, see Lewis v. Jeffers, 497 U.S. 764, 780, 110 S.Ct. 3092, 111 L.Ed.2d 606 (1990). The Supreme Court has stated many times that "federal habeas corpus relief does not lie for errors of state law." Swarthout v. Cooke, 562 U.S. 216, 131 S.Ct. 859, 861, 178 L.Ed.2d 732 (2011). Because state courts are the ultimate expositors of state law, the federal courts are bound by their constructions and limited to deciding whether a conviction violates the Constitution, laws or

13

treaties of the United States. See Bonin v. Calderon, 59 F.3d 815, 841 (9th Cir.1995).

In addition, matters relating to state sentencing are not cognizable under federal habeas review. Miller v. Vasquez, 868 F.2d 1116, 1118–19 (9th Cir.1989) (holding that a question of whether a prior conviction qualifies for sentence enhancement under California law is not a cognizable federal habeas corpus claim). "Absent a showing of fundamental unfairness, a state court's misapplication of its own sentencing laws does not justify federal habeas relief." Christian v. Rhode, 41 F.3d 461, 469 (9th Cir.1994). "A habeas petitioner must show that an alleged state sentencing error was "so arbitrary or capricious as to constitute an independent due process" violation." Richmond v. Lewis, 506 U.S. 40, 50, 113 S.Ct. 528, 121 L.Ed.2d 411 (1992).

As Respondent correctly notes, Petitioner's claim is one of state sentencing law and does not implicate a federal constitutional right. See, e.g., Estelle v. McGuire, 502 U.S. 62, 67–68, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991) (no federal habeas relief for alleged errors in interpretation or application of state law); Souch v. Schaivo, 289 F.3d 616, 622–23 (9th Cir.2002) (state prisoner's challenge to trial court's exercise of discretion under state sentencing law fails to state federal habeas claim); Ely v. Terhune, 125 F.Supp.2d 403, 411 (C.D.Cal.2000) (claim that trial court abused its discretion by refusing to strike a prior conviction not cognizable on federal habeas review); Furr v. Cate, No. ED CV 10–01275–SJO (VBK), 2011 WL 2563176, at *5 (C.D.Cal.2011) (habeas claim that state court refused to not consider prior strike at sentencing pursuant to People v. Romero [13 Cal.4th 497, 53 Cal.Rptr.2d 789, 917 P.2d 628 (1996) ] not cognizable on federal habeas review).

Petitioner attempts to convert his claim into a federal one by alleging his murder convictions lack a jury determination on each element. As noted by the state court, the murder convictions were left undisturbed by the federal courts.  Petitioner was granted relief solely on his sentencing claims. The Ninth Circuit granted a conditional writ to grant habeas relief on the special circumstance findings, but left the murder convictions undisturbed.

To the extent he seeks relief based on the change in law caused by Senate Bill 1437, California law provides a procedure pursuant to Cal. Penal Code § 1172.6 to petition for relief. Respondent is correct that the state court interpretation of Cal. Penal Code § 1172.6, the state

court's application of § 1172.6, and the state court's finding that Petitioner failed to properly avail himself of the procedure are not reviewable in a federal habeas action. Other district courts have concluded the same. See Hall v. California, 2025 WL 2638654, *2 (C.D. Cal. September 10, 2025) (collecting cases).

Petitioner does not cite any Supreme Court authority which would require the state court to redetermine the validity of a conviction based on a change in state law. Petitioner cites one case, United States v. Gaudin, 515 U.S. 506, 510 (1995), in support of his contention. In Gaudin, the Supreme Court reaffirmed its holding that a criminal conviction must "rest upon a jury determination that the defendant is guilty of every element of the crime with which he is charged, beyond a reasonable doubt." Id. In his reply, Petitioner supplements his claim with additional authorities: Sullivan v. Louisiana, 508 U.S. 275, 277-78 (1993); Patterson v. New York, 432 U.S. 197, 210 (1977); Leland v. Oregon, 343 U.S. 790, 795 (1952); In re Winship, 397 U.S. 358, 364 (1970); and Cool v. United States, 409 U.S. 100, 104 (1972).  As correctly noted by Respondent, Gaudin and the additional cases cited by Petitioner addressed the initial jury determination. Here, a jury found Petitioner guilty of the murder charges, Petitioner challenged those convictions on appellate and collateral review, and his challenges were rejected. See Dickey v. Davis, 69 F.4th 624 (9th Cir. 2023); People v. Dickey, 35 Cal. 4th 884 (2005). The convictions were not overturned. Gaudin does not stand for the proposition that Petitioner's conviction must be revisited and re-determined because of a subsequent change in state law. Again, California provides an avenue for Petitioner for such re-determination. Despite being advised of this by the state courts, Petitioner chose not to pursue such relief. (Doc. 11-8 at 14-20.)

**IV.    RECOMMENDATION**

Based on the foregoing, the Court **RECOMMENDS** that the petition for writ of habeas corpus, (Doc. 1), be **DENIED** with prejudice on the merits, and the motion for summary judgment (Doc. 14) be **DENIED**.

This Findings and Recommendation is submitted to the United States District Court Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636 (b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California.  Within

twenty-one (21) days after being served with a copy of this Findings and Recommendation, a party may file written objections with the Court and serve a copy on all parties. Id. The document should be captioned, "Objections to Magistrate Judge's Findings and Recommendation" and shall not exceed fifteen (15) pages, except by leave of court with good cause shown. The Court will not consider exhibits attached to the Objections. To the extent a party wishes to refer to any exhibit(s), the party should reference the exhibit in the record by its CM/ECF document and page number, when possible, or otherwise reference the exhibit with specificity. Any pages filed in excess of the fifteen (15) page limitation may be disregarded by the District Judge when reviewing these Findings and Recommendations pursuant to 28 U.S.C. § 636 (b)(1)(C).  The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal.  Wilkerson v. Wheeler, 772 F.3d 834, 838-39 (9th Cir. 2014).  This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of the District Court's judgment.

IT IS SO ORDERED.

Dated:   **January 14, 2026**                      /s/ *Sheila K. Oberto*
                                                          UNITED STATES MAGISTRATE JUDGE

16